©COPY

FILED
2011 AUG 15 PM 3:33
[CLERK] U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  ANDREW J. THOMAS (SBN 159533)
   ajthomas@jenner.com
2  L. DAVID RUSSELL (SBN 260043 )
   drussell@jenner.com
3  JENNER & BLOCK LLP
   633 West 5th Street, Suite 3500
4  Los Angeles, CA 90071
   Telephone: (213) 239-5100
5  Facsimile:  (213) 239-5199

6  GIANNI P. SERVODIDIO (pro hac vice)
   gservodidio@jenner.com
7  JOSEPH J. MCFADDEN (pro hac vice)
   jmcfadden@jenner.com
8  JENNER & BLOCK LLP
   919 Third Avenue, 37th Floor
9  New York, NY 1002
   Telephone: (212) 891-1600
10 Facsimile:  (212) 891-1699

11 Attorneys for Defendants and Counter-Claimants
   Ventura Content, Ltd. (incorrectly named as
12 Ventura Content, AVV) and Cyberheat, Inc.

13             UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15 INTER-AVID PRODUCTIONS,           Case No. 11-CV-05119 GHK (VBK)
   a California Corporation,
16
                        Plaintiff,   **COUNTER-CLAIM FOR**
17                                   **DECLARATORY RELIEF**
        v.
18
   VENTURA CONTENT, AVV, an Aruban
19 Corporation, and doing business as Pink
   Visual; CYBERHEAT, INC., an Arizona
20 Corporation, and doing business as Pink
   Visual; and DOES 1 through 20, Inclusive,
21
                        Defendants.
22
   VENTURA CONTENT, LTD., an Anguilla
23 Company; and CYBERHEAT, INC., an
   Arizona Corporation,
24
                  Counter-Claimants,
25
        v.
26
   INTER-AVID PRODUCTIONS, a
27 California Corporation; and ANDREW
   STODDARD, an individual,
28
                  Counter-Defendants.

---

COUNTER-CLAIM

1  Counterclaimants Ventura Content, Ltd. and Cyberheat, Inc. (collectively, "Ventura"), for their Counter-Claim against plaintiff Inter-Avid Productions ("Inter-Avid") and against Andrew Stoddard ("Stoddard"), allege as follows:

  1.  Pursuant to a number of written agreements between Andrew Stoddard – the owner of Inter-Avid – and Ventura, Ventura is the owner of the exclusive right to copy and distribute all of the content at issue in this action (the "Content"). In accusing Ventura of copyright infringement, Inter-Avid fails to mention these assignments, and the history between the parties plainly reveals that Inter-Avid's copyright infringement suit against Ventura is part and parcel of an effort to extract hundreds of thousands of dollars from Ventura for Stoddard's newest business venture. Inter-Avid's copyright infringement claims should be dismissed, and a declaration of non-infringement as to all of the copyrights referenced in the Complaint should be entered in favor of Ventura and against Inter-Avid and Stoddard.

## SUMMARY

  2.  Ventura is the owner and producer of adult entertainment content that it released under the brand name "Pink Visual." Andrew Stoddard, the owner of Inter-Avid, was formerly employed by Ventura to film content for its websites.

  3.  In 2002, Ventura gave Andrew Stoddard his start in the adult entertainment industry. By his own admission, when Stoddard started filming videos for Ventura he had no references and no experience in the adult industry. Rather, his governing philosophy was to "fake it until you make it" because he "needed the money." Despite his lack of experience, Ventura took a chance on Stoddard and hired him to film videos for Ventura's Internet websites. Ventura provided Stoddard with express instructions on what to film and also provided him with feedback on the content he delivered.

  4.  Stoddard has publicly acknowledged that Ventura paid him "a lot of money" – millions of dollars over the course of approximately four years – for his

work. In exchange, Stoddard executed a series of written agreements, on behalf of himself and Inter-Avid, that assigned to Ventura the exclusive right to copy, edit, distribute, perform, and display the content he filmed. Stoddard expressly acknowledged that Ventura owned the copyrights in all the videos that Stoddard made pursuant to his agreements.

5. Stoddard stopped filming for Ventura in 2006, but his relationship with the company continued. Since 2006, he has assisted Ventura in selling its content, has had his employees send copyright notices on Ventura's behalf which identified Ventura as the copyright owner of the Content, has licensed rights to Ventura's Content for use on his own websites, and has expressly agreed that Ventura was the absolute owner of all the Content he created while working for the company.

6. In 2010, more than four years after he gave his notice and stopped working for Ventura, Stoddard suddenly asserted rights in all of the Content that he had filmed for the company. Stoddard's claim of ownership did not come out of the blue. Rather, Stoddard had fallen on hard times. Just months before, he had approached Ventura seeking a $200,000 "investment" in his new business in order to help him get it off the ground. When Ventura refused, Stoddard attempted to claim rights in the content he had filmed years before in order to convince Ventura to invest in his company. When Ventura still refused, he retaliated by concocting a baseless theory that Ventura's ownership of the Content was subject to unilateral "termination" by Stoddard or Inter-Avid.

7. Stoddard did not include any of this information in his Complaint on behalf of Inter-Avid in this action. Nor did he mention it to the Copyright Office when he registered videos that had already been registered by Ventura years before. Rather, Stoddard and Inter-Avid framed the Complaint's allegations as if Ventura were an unrelated third party that had simply begun using content that did not belong to it. Stoddard and Inter-Avid do not mention the written agreements

they signed, or the millions of dollars they were paid, or their knowledge of Ventura's claim of copyright ownership, or even their own express acknowledgement of Ventura's copyright ownership. These facts require the entry of judgment in Ventura's favor.

## JURISDICTION AND VENUE

8. This is an action arising under the Copyright Act, 17 U.S.C.§ 101, *et seq.*, and for declaratory relief brought under 28 U.S.C § 2201. This Court has jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1338. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

9. Ventura Content, Ltd. is an Anguilla company with its principal place of business in Anguilla. Until its redomiciliation in 2011, Ventura was a company organized under the laws of Aruba and operating under the name Ventura Content, AVV.

10. Cyberheat, Inc. is a corporation organized under the laws of the state of Arizona. Cyberheat, Inc. is also the predecessor-in-interest to Ventura.

11. Upon information and belief, counter-defendant Inter-Avid Productions is a California corporation.

12. Upon information and belief, counter-defendant Andrew Stoddard is the owner of Inter-Avid and a resident of Los Angeles, California. Upon information and belief, Stoddard also has done business under the name Inter-Avid Films.

13. Ventura is informed and believes, and on that basis alleges, that Stoddard personally makes decisions regarding, participates in, directs, exercises control over, and benefits from the activities of Inter-Avid, and that at all relevant times Stoddard and Inter-Avid were agents and/or alter egos of each other and that each was acting under his or its authority as an agent of the other.

## STATEMENT OF FACTS

14. In 2002, Ventura was looking to hire producers to film adult entertainment content for its various websites, and Stoddard expressed in interest to Ventura in filming on Ventura's behalf.

15. Stoddard claimed to have experience in the adult entertainment industry and, based on that claim, Ventura hired him to begin filming Content for its websites.

16. When Stoddard began filming, Ventura and Stoddard entered into a written contract for a specific number of episodes of Content. Pursuant to that contract, Ventura paid Stoddard a set fee for each episode, and in exchange Stoddard assigned to Ventura the exclusive right to copy, edit, encode, distribute, and publish the content in any medium, including over the Internet and on DVD. In addition, Stoddard explicitly agreed that the Content would not be sold, licensed or distributed to anyone other than Ventura.

17. After the initial episodes were delivered, Stoddard and Ventura entered into another contract on essentially the same terms – a contract which also assigned to Ventura all exclusive rights in the Content that was created.

18. After Stoddard had delivered a number of satisfactory videos, Ventura and Stoddard entered into a number of open-ended contracts in which Stoddard agreed to create – and Ventura agreed to pay for – a specific number of videos each month. These contracts contained the same assignment of rights as the previous contracts. In addition, they contained a provision that allowed either party to terminate its obligation to create or purchase new content on 30 days notice.

19. The 30-day notice provision was heavily negotiated between the parties. Stoddard was concerned that filming Content created up-front costs for him, and he did not want to be left with these costs on short notice if Ventura decided it did not need him anymore. In the end, the parties agreed that 30 days

1 was sufficient notice.

20. As was industry practice, the parties understood, that Ventura was the absolute owner of the Content in perpetuity. The termination provision was explicitly understood by the parties to apply only to the ongoing obligation to create and pay for Content. This understanding was confirmed between the parties.

21. After he had been working for Ventura for some time, Stoddard created his own production company, Inter-Avid, to begin acting as the contracting party with Ventura. From that point on, Ventura entered into a number of substantially identical written agreements with Inter-Avid.

22. While these agreements were in existence, Stoddard and Inter-avid delivered hundreds of episodes of Content to Ventura, and Ventura paid Stoddard and Inter-Avid substantial sums of money for the exclusive right to exploit the Content in perpetuity.

23. In August 2006, Stoddard provided notice to Ventura that he would discontinue filming Content on its behalf. Confirming the parties' understanding of the termination provision requiring 30-days notice, Stoddard drafted an email formally providing notice to Ventura under the contract. Further confirming the understanding of the parties that the termination provision applied only to his obligation to create new content, Stoddard agreed to finish filming new episodes of Content for which he had already been paid but which he had not delivered. As a result, Stoddard continued to deliver new Content to Ventura more than 30 days after giving notice of termination.

24. Stoddard's delivery of content *after* giving notice of termination confirms the fact that "termination" of the agreement did not affect Ventura's exclusive rights to exploit the Content.

25. Although Stoddard and Inter-Avid ceased filming Content for Ventura in 2006, Stoddard continued to do business for Ventura. As a result of his

continuing work for Ventura, Stoddard was well aware that Ventura continued to exploit the Content long after August 2006.

26. For example, Stoddard ran a business in which he attempted to convince video stores to carry Ventura's Content on DVD. As part of this business, Ventura paid Stoddard to promote the Content on its behalf. Through this business, Stoddard was aware that Ventura continued to exploit the Content and was further aware that Ventura claimed copyright ownership in the Content.

27. In addition, Stoddard's employees assisted Ventura in protecting its copyrights against Internet piracy. Through this program, Stoddard's employees sent copyright notices on Ventura's behalf in which Ventura claimed ownership of the Content.

28. Furthermore, at one point, Stoddard sought additional adult entertainment videos for a website he was creating. As a result, he paid Ventura for the right to stream videos owned by Ventura, including the Content, to his own websites. Clearly, if Stoddard owned the Content or had the right to assert ownership at any time, such payments would have been wholly unnecessary.

29. In addition, Ventura's promotion and exploitation of the Content since 2006 has been open and notorious. For example, Ventura has filed copyright registrations in its own name covering much of the Content.

30. Although Stoddard was consistently on notice of Ventura's ownership claim in the Content, at no time between the notice of termination in August 2006 and October 2010 did Stoddard or Inter-Avid object to Ventura's continued exploitation of the Content, nor did they dispute Ventura's claim of ownership with respect to the Content.

31. As part of an effort to update and standardize its copyright records, in the spring of 2010, Ventura approached many of its old producers – including Stoddard – and asked them to sign a short declaration that would confirm that all the Content had been created at Ventura's direction and that Ventura owned all

copyrights therein.

32. All of the producers that Ventura approached – including Stoddard – confirmed their understanding that Ventura was the owner of all copyrights in content created while under contract with Ventura.

33. After confirming that Ventura was the copyright owner of all Content, but prior to actually signing the declaration, Stoddard approached Ventura with respect to a completely unrelated business venture that he was attempting to launch. Stoddard indicated that he was having trouble raising funds and asked Ventura for $200,000 to help him get the business off the ground.

34. Ventura indicated that it would consider his request. Shortly thereafter, Stoddard told Ventura that he would only sign the declaration if Ventura agreed to invest money in his new business venture. Ventura refused.

35. Thereafter, in October 2010, Stoddard sent Ventura a letter that purported to "terminate" Ventura's exclusive rights in the Content.

36. Ventura responded to Stoddard and informed him that neither he nor Inter-Avid had a legal right to terminate Ventura's exclusive rights. Specifically, Ventura reminded him that the parties had explicitly agreed that the "termination" provision on which he relied applied only to the ongoing obligation to create and purchase Content. Furthermore, Ventura reminded him that he had purported to "terminate" the agreements in August 2006, and that he had been well aware of Ventura's claim of ownership since that time.

37. Stoddard and Inter-Avid never responded to Ventura's letter. Instead, a few months after receiving Ventura's rejection of the bogus "termination" notice, Stoddard and Inter-Avid began registering copyrights in the Content. Despite being on notice that the Content had already been registered by Ventura, Stoddard failed to inform the Copyright Office of this fact – information that he was required to disclose. As a result, many – if not all – of the registrations obtained by Stoddard and Inter-Avid with respect to the Content were obtained through fraud

on the Copyright Office.

38. Thereafter, Stoddard filed this lawsuit alleging that Ventura has been committing copyright infringement by continuing to use the Content after Stoddard's legally irrelevant notice of termination in October 2010.

## CLAIM FOR DECLARATORY RELIEF

39. Ventura incorporates each of the allegations in paragraphs 1-38 of this Counterclaim and Third-Party Complaint as if set forth fully herein.

40. Inter-Avid has asserted copyright infringement claims against Ventura with respect to the Content created for Ventura by Inter-Avid and Stoddard. Specifically, in its Complaint in this action Inter-Avid alleges that it has obtained copyright registrations for 233 works, that it has applied for but not obtained registrations for another 87 works, and that it is claiming rights under copyright law with respect to approximately 980 more works that it has not yet sought to register.

41. Inter-Avid and Stoddard assigned to Ventura the exclusive right to exploit the Content in any form, including on DVD and over the Internet.

42. There is an actual and substantial controversy between Inter-Avid and Stoddard on the one hand and Ventura on the other arising under federal copyright law, 17 U.S.C. § 101 *et seq.*

43. Ventura is entitled to a judgment declaring it the rightful owner of the exclusive rights to copy, edit, distribute, publicly perform, and publicly display the Content.

44. Ventura is also entitled to a judgment declaring that its distribution of the Content in DVD form and over the Internet does not infringe on any rights held by Inter-Avid or Stoddard.

## PRAYER FOR RELIEF

WHEREFORE, Ventura respectfully requests that the Court:

A. Dismiss Inter-Avid's Complaint in its entirety;

B. Declare that Ventura is the owner of all the exclusive rights in the Content pursuant to 17 U.S.C. § 106;

C. Declare that Inter-Avid's copyright registrations with respect to the Content, including the registrations and applications identified in Exhibits A and B to Inter-Avid's Complaint in this action, are invalid and unenforceable;

D. Declare that Ventura does not infringe any rights held by Inter-Avid or Stoddard by copying, editing, performing, displaying and/or distributing the Content in DVD form and over the Internet;

E. Award Ventura its costs in this action including, but not limited to, all court costs and filing fees and reasonable attorneys' fees;

F. Grant Ventura such other and further relief as the Court may deem just and proper.

Dated: August 15, 2011        JENNER & BLOCK LLP

By: _____
Andrew J. Thomas

Attorneys for Defendants and Counter-Claimants Ventura Content, Ltd. (incorrectly named as Ventura Content, AVV) and Cyberheat, Inc.